†Phillip Eckstein et al. v. Board of Education of Chicago Junction et al.

1. Transfer of Territory from One District to Another.

Whether it is essential to the protection of the probate court, in proceedings to transfer certain territory from one school district to another, that it be averred that the petition for such transfer has been filed with the board of education of the townships affected, and has been denied. *Quere?*

†This judgment was affirmed by the Supreme Court, without report. 55 O. S., 643.

**2. JURISDICTIONAL AVERMENTS AS TO TERRITORIAL LINES.**

If it be shown in the application that it is sought to take, by certain lines, a certain defined territory from one township school district and attach it to another, this is sufficient as to a jurisdictional averment, in showing the purpose of the petition relative to the change of lines of the districts affected.

**3. TAXATION OF NEW TERRITORY.**

Territory attached to a school district from adjoining districts should be taxed with the district to which it is removed and is not subject to the power of taxation by the old board of education of the district from which it has been detached.

**4. ACT OF 1888 CONFERS CORPORATE POWERS AND IS VOID.**

The act of 1888, 85 O. L., 412, authorizes the board of education of Chicago Junction village school district to borrow money and issue bonds, confers corporate powers, is in conflict with section 1, article 13, Constitution, and void.

ERROR to the Court of Common Pleas of Huron county.

SCRIBNER, J.

This is an appeal from the judgment rendered therein by the court of common pleas. The action is brought to test the legality and validity of certain proceedings had in the probate court of Huron county, whereby it was sought to detach certain territory from the townships of Richmond and New Haven and to attach the same to the village school district of Chicago Junction.

Section 3893, Rev. Stat., contains this language,

Section 3893: "A part or the whole of any district may be transferred to an adjoining district, by the mutual consent of the board of education having control of such districts; but no such transfer shall take effect until a statement or map, showing the boundaries of the territory transferred, is entered upon the records of such boards, nor, except when the transfer is for the purpose of forming a joint sub-district, until a copy of such statement or map, certified by the clerks of the board making the transfer, is filed with the auditor of the county in which the transferred territory is situated; and any person living in the territory so transferred may appeal to the county commissioners, as provided in sec. 3967, Rev. Stat., and the commissioners, at their first regular meeting thereafter, shall approve or vacate such transfer."

On February 27, 1893, as it appears from certain papers that are included in the evidence submitted here, there was filed with the board of education of Chicago union school district, Huron county, Ohio, an application brought under the section of the statute which I have just read, and which application reads:

"Gentlemen: We, the undersigned electors residing in the territory hereinafter described, do hereby respectfully pray your honorable body to so change the boundary lines of your school district to include the following described property, to-wit: \
In section 3, of New Haven township, that part of lot 48 not already in the district; lots 27 and 28; lots 46 and 47.
In section 2, of Richmond township, that part of lots 25 and 30 not already included in said district; all of lots 24, 26, 29, 31 and 32. All of said described property being in Huron county, Ohio. All of which we ask to have included in Chicago Junction school district, believing it to be greatly to our educational interests, as well as that of others. And thus we shall ever pray." Signed by five persons.

There also appears among the papers, a statement certified by J. A. Pittsford, clerk of the joint meeting, as it is subscribed, and dated Chicago, March 27, 1892, that certain proceedings were had, under the application which I have just read, at which the several boards of education refused to grant the prayer of the petitioners, so that the application, as it appears in these papers and elsewhere in the case, was disallowed.

Sections 3928 to 3945, inclusive, relate to the formation of sub-districts, and the provisions are of such a character as to lead us to the conclusion that they have no application to the proceedings of the character such as was subsequently had here.

Sections 3946 to 3948, inclusive, relate to another proceeding having in view the accomplishment of the same purpose.

Section 3946 reads:

Eckstein et al. v. Board of Education.

"A petition may, in like manner, be filed with the clerk of the board of education of any township praying for the creation of an additional sub-district, or for changing the lines of sub-districts, or for the creation of a special school district, or for changing the lines of special or village districts, and adjoining sub-districts; but when a special or village district is interested in such proposed change, the petition may be filed either with the clerk of the township board, or the clerk of the board of education of such special or village district; and when any such lines have been so changed, they shall not be altered by any board or boards of education until after the expiration of three years, except upon the written consent of two-thirds of the electors residing within the territory affected by the change."

### Section 3947 reads:

"Such petition may be filed with the clerk of the board of education of such special or village district, with the clerk of the board of education of the township, or, if the change sought by the petition affect the territory in more than one township, with the clerk of the board of education of either township; and upon the filing thereof, the members of the board or boards interested shall be notified, as provided in sec. 3933."

### Section 3948 reads:

"It shall be the duty of such board or boards to meet and consider the petition within thirty days from the time the same is filed, but on failure to do so within sixty days of such time, or if the board or boards meet and grant, or refuse to grant, the prayer of the petition, a petition or remonstrance may be filed with the probate judge of the county by either party, as provided in sec. 3934; and, thereafter, such proceedings may be had thereon, and they shall have the same effect as is therein provided for the formation of joint sub-districts."

These boards of education of the three districts had their last meeting March 27, 1892, at which time a failure to agree upon the proposition submitted, took place.

On April 28th, a petition was filed—at least it bears that date—with the probate judge of Huron county, and reads:

"Hon. G. T. Thomas, probate judge of Huron county, state of Ohio. Whereas, the boards of education of Richmond township, New Haven and Chicago Junction village school district, in said county and state, having refused, at a meeting held in Chicago Junction on Friday, March 25, 1892, to grant our petition, or any part thereof, praying to have the boundary lines of Chicago Junction school district changed. Said petition having been filed with J. A. Pittsford, clerk of Chicago Junction school district, February 27, 1892, as prescribed by law.

"Therefore, we, the undersigned petitioners and also electors not petitioners, residents in the territory hereinafter described, do hereby most respectfully pray and petition you to appoint three judicious, disinterested men of said county, and not residents of either townships or districts to be affected by this petition, to consider the propriety of changing the boundary lines of Chicago Junction school district, so as to include the following property, to-wit, more or less as the commission may decide. In sec. 3, of New Haven township, that part of lot 48, not already in the district; all of lots 27, 28, 46 and 47. In sec. 2, of Richmond township, that part of lots 25 and 30, not already included in said district; all of lots 24, 26, 29, 31 and 32. And thus we shall pray." This is subscribed by six petitioners.

It appears that on May 25th, by the record of the proceedings had in the probate court, a bond was filed as required by the statute, securing the payment of the costs of the proceeding in the case. Then, afterwards, on May 7, 1892, the probate court made an order of this tenor:

"This day this cause came on for hearing upon the petition hereinbefore filed by M. O. Rettig et al., and the same being found in all respects according to law, and the petitioners having filed an undertaking for costs as required by law; it is ordered that T. K. Strimple, D. D. Benedict and John C. Scheffield, three judicious and disinterested men of the county, not resident of any township to be affected by this proceeding, be, and they are hereby appointed commissioners, to act in the premises; it is further ordered that said commissioners meet at the school house in Chicago Junction on June 16, 1892, at ten o'clock A. M. to discharge the duties of their appointment, after being first duly sworn as required by law, that they may make a report of their proceedings herein, on or before July 16, 1892; it is further ordered that notice of the filing of said petition, and of the time and place of meeting of said commissioners, be published for four consecutive weeks in the Norwalk Reflector and the Experiment News, two papers of opposite politics, printed and of general circulation in said county."

On June 10, 1892, the petitioners asked and obtained leave to file an amendment to their petition, and that petition was filed on the 11th of the same month.

The amendment sets out that the filing of the petition with the clerk of Chicago Junction school district, February 27, 1892, was duly signed by qualified electors, residents of the territory sought to be included within the said village school district, and that a petition was filed asking that the boundary lines of said village district be so changed as to include in such district the same territory specifically described in the petition herein. That upon the filing of said petition, which was addressed to the board of education of said Chicago Junction village school district, notice was duly given, in manner and form as by law required, of the filing of such petition, and naming a suitable and convenient time and place for the boards of education of said village district and of Richmond and New Haven townships in said Huron county to meet; that the several members of said boards were duly notified of such meeting. That more than sixty days have elapsed since said petition was filed.

The records of the proceedings in the probate court show the various steps that were taken in the proceeding—the giving of notice under the statute, the motion by the attorney for the parties defendant—a proceeding to dismiss it for want of jurisdiction, the action of the court on that motion, and the report of the commissioners and the return of the map with the report, and the confirmation of the proceedings and the report of the commissioners by the probate judge, July 7, 1892.

The report of the commissioners with the map attached, forming a part of the report, shows the granting of the request substantially, of the petitioners; shows the territory which was detached from the sub-districts of Richmond and New Haven townships and attaching them to the Chicago Junction village school district, and sets out also a description, by meets and bounds, of the entire territory as actually changed and constituted under this proceeding.

In their report, the commissioners say among other things:

"We find that the lines of the village district of Chicago Junction and of the adjoining sub-districts in Richmond and New Haven townships, in said Huron county (to-wit, sub-district No. 3, in Richmond township, and No. 3, in New Haven township), should be so changed as to include the territory described in the petition within the boundaries of said village district, together with lot No. 45 in section No. 3, in said New Haven township, and all of that part of lot 23 in the second section of Richmond township lying east of north and south road."

The commissioners then proceed in their report to give the reasons for determining upon this change. The report of the commissioners, as I have already said, was confirmed by the probate court.

In this petition, it is insisted that these proceedings were unauthorized and illegal, and the court is asked to enjoin the authorities from carrying into effect or execution the change which is provided for in the action had in the probate court.

The prayer is:

"Whereas, these plaintiffs pray that due inquiry may be made of the matter herein complained of; that upon such inquiry, the said board of education of the village district of Chicago Junction may be forever enjoined and restrained from levying any taxes or assessments upon the lands or personal property of these plaintiffs, or of such persons as stand in like case with them, or from assuming or taking territorial jurisdiction over their lands; that the said auditor may be enjoined and restrained from assessing of taxes or assessments certified to him by said village district board of education against or upon the lands or personal property of these plaintiffs, or of those in whose interest this action is brought, and from entering any such taxes or assessments so assessed upon the tax lists of the said county; that the said treasurer may be enjoined and restrained from collecting, or attempting to collect from said lands or property or the owners thereof any taxes or assessments levied thereon by said village board, or by said auditor upon the certificate of said board; that the said township board of education may be severally enjoined and restrained from interfering with the attendance at the schools within said districts of the children of these plaintiffs, and other persons, and for such other, further and different relief as may be found proper."

Upon the argument of counsel for the plaintiffs and in his brief filed with us, this claim is made: We contend that the application or petition filed in probate court, should show that the petition had been filed with the boards of education of the same townships whose territory is to be affected as with the village district, as in this case.

It may be remarked in regard to this matter, or this claim, that it is averred in the petition filed in probate court, "that the boards of education of Richmond township, New Haven township and Chicago Junction village school district, in this county and state, having refused, at a meeting held in Chicago Junction on Friday, March 25, 1892, to grant our petition, or any part thereof, praying to have the boundary lines of Chicago Junction school district changed, said petition having been filed with J. A. Pittsford, clerk of Chicago Junction school district, February 27, 1892, as prescribed by law."

If it be essential to the jurisdiction of the probate court to act in the matter that it be averred in the proceedings, that the application has been filed with the boards of education of the several townships to be affected, and has been denied, it appears to us that this statement in the petition filed in the probate court upon which the foundation is laid to proceed, has complied with that requirement, that is, more particularly through the amendment filed some time later.

We are not entirely clear that it was essential that a proceeding in probate court should show that a prior action was had under sec. 3893.

It is further said by counsel, and the claim is made in their brief upon this point, and is a part, substantially, of the general proposition which he has stated, that as to the application filed in the probate court, that the record should show that action had been taken previously, and that the boards of education had failed to meet, or, having met, had failed to agree, and that the purpose of the petition is to change the lines of the village district and adjoining districts. It is insisted that this averment is jurisdictional.

It is also suggested in the argument that the petition filed, while it did show what territory was to be detached from the adjoining townships and attached to Chicago Junction school district, yet it did not show and did not purport to show wherein the lines of the New Haven township district, or of the Richmond township district would be changed. But, if I comprehend correctly the proposition as stated, it would seem necessarily to follow that when the petition set forth the territory which it was sought to detach from one township and attach to another township, that thereby it was shown not only in what respects the territory thus added to was changed, but also in what respect or particulars the territory from which part was to be detached and attached to another township was to be changed.

If it be shown that it is sought to take, by certain lines, a certain defined territory from one township, or one village school district, or from a township school district, and to attach that territory to an adjoining school district, it would seem, as I have just stated, to follow evidently that the change that was sought to be made in the township from which the territory was to be taken would require a corresponding change in the township to which the territory was to be attached.

There seems to be some difficulty as to what may be the result of a change like this as to the power of taxation in a school district as newly constituted, with the territory detached and the territory from the adjoining township attached to it; as to whether or not the officers of the district as so enlarged, for example, in this case, the authorities of the Chicago Junction village school district, have the authority to levy a tax upon the property of the territory which is detached from the other two townships and added to Chicago Junction school district, or whether the parts formerly belonging to the old township districts are to be taxed by the authorities of those districts, and the fund certified under the statute so as to be expended by the authorities controlling the Chicago Junction

districts. We have found some difficulty about that. We are not entirely clear in our own minds in regard to it.

We find, as reflecting some light upon the matter, this language in the section relating to classification—secs. 3885 to 3891, inclusive. Section 3885 reads:

" The state is hereby divided into school districts to be styled respectively city districts of the first grade of the first class, city districts of the second grade of the first class, city districts of the first class, city districts of the second class, village districts, special districts and township districts."

### In sec. 3886, the language is:

"Each city having a population of ten thousand or more including the territory attached to it for school purposes, and excluding the territory within its corporate limits detached for school purposes, shall constitute a school district, to be styled a city district of the first class; and each district that has heretofore been constituted a city district of the first class shall remain such. "

### Then sec. 3887 reads:

"Each city of the second class, having a population of less than ten thousand by the census of 1870, including the territory attached to it for school purposes, and excluding the territory within its corporate limits detached for school purposes, shall constitute a school district, to be styled a city district of the second class. "

### Section 3888 reads:

" Each village, including the territory attached to it for school purposes, and excluding the territory within its corporate limits detached for school purposes, shall constitute a school district to be styled a village district. " And so on as to the township districts and special districts.

Now, take Chicago Junction village school district, which seems to fall within sec. 3888, we find it provided as I have read, that each village, including the territory attached to it for school purposes, and excluding the territory then within the corporate limits detached for school purposes, shall constitute a school district to be styled a village district.

Now, if this language of these different sections relating to classification of school districts is to be treated prospectively as well as presently, we find that in this case the territory which is attached to it for school purposes, together with the district as it originally stood, constitute a school district to be styled a village district, and if these proceedings in the probate court be effectual to the end had in view in taking them, so that the territory detached from each of these townships adjoining Richmond and New Haven, and attached to Chicago Junction village school district, constitutes with that of the former village district, a village school district, and if it is treated in that view, then the property embraced therein may be taxed by the authorities of the Chicago Junction village school district, and it is not subject to the power of taxation by the old directors or board of education of the districts from which those parcels are detached, because they no longer form any part of them.

Now, although as I say we are not satisfied entirely with this view, this construction of the statute, yet our conclusion is that that is the view to be applied to this case, and it results from that that these proceedings are to be regarded as legal and valid; that the prayer for injunction upon the part of these plaintiffs must be denied except to this extent: There was issued by Chicago Junction school district, bonds to the extent of three thousand dollars issued under authority of the act passed in 1888, contained in 85 O. L., 412. That act was without any doubt a special act; it is an act that undertakes to confer in terms, upon the school authorities of Chicago Junction village school district, power to borrow money and to issue bonds and the levying of taxes to provide for the payment of those bonds, and the act comes directly within the prohibition contained in sec. 1 of art. 13, where it is declared that the general assembly shall pass no special act conferring corporate powers. This act is a special act. About that

there is no doubt. It does confer corporate powers, because it confers power to issue bonds and borrow money. That question has been many times decided, by the Supreme Court of the United States among others.

To the extent that it is sought to charge upon the property of these plaintiffs, thus represented by them, anything for taxes for the payment of interest and principal upon these bonds, the injunction should be granted, and to that extent only is granted.

Our understanding of the decision of the Supreme Court in the cases that were cited in this argument is, that the people who are brought in by proceeding duly taken under the statute, become subject to a burden of taxes assessed under valid laws. The order of the court will be that the costs shall be divided in this case.

*S. M. Young*, for plaintiffs.

*Walker & Severance*, for defendants.

---

## JUDGMENT OF FORECLOSURE.